IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| v. | ) Criminal No. 19-49<br>) Judge Nora Barry Fischer |
| NICOLE WALLACE, | )<br>) |
| Defendant. | ) |

---

| | |
|---|---|
| NICOLE WALLACE, | )<br>) |
| Petitioner, | )<br>)<br>) |
| v. | ) Civil A. No. 20-637<br>) Judge Nora Barry Fischer |
| MICHAEL BAUGHMAN, Marshal, United States Marshal Service, Western District of Pennsylvania, and ORLANDO HARPER, Warden, Allegheny County Prison, | )<br>)<br>)<br>)<br>) |
| Respondents. | ) |

## MEMORANDUM OPINION

I.  INTRODUCTION

Presently before the Court is Nicole Wallace's motion/habeas petition which is opposed by the Government as well as respondents, Michael Baughman, U.S. Marshal for the Western District of Pennsylvania and Orlando Harper, Warden of the Allegheny County Jail ("ACJ"). (Crim. No. 19-49, Docket Nos. 80, 82, 85, 87, 90; Civ. A. No. 20-637, Docket Nos. 1, 5, 7). The motion/petition have been exhaustively briefed by the parties and are now ripe for disposition. (*See id.*). After careful consideration of the parties' positions and for the following reasons, Wallace's motion/petition are denied.

II.     BACKGROUND

Wallace is presently serving a 48-month sentence of incarceration imposed by this Court on January 8, 2020 following her convictions on two counts of aiding and abetting armed bank robbery and one count of aiding and abetting attempted bank robbery, all in violation of 18 U.S.C. §§ 2113(d) and 2, for conduct occurring on October 17, 2018; October 26, 2018; and October 29, 2018. (Docket No. 77). Jason Rini was the leader of the criminal conduct as he entered the banks and held up tellers using what appeared to be a handgun in the two successful robberies but failed in the third robbery attempt as an armed security guard pulled his own handgun causing Rini to retreat. (Docket No. 78 at 33-34). For her role, Wallace borrowed a vehicle from a relative and served as the getaway driver in the three incidents. (*Id*. at 34). Her husband, Edward Hooten, acted as a lookout during the robberies. (*Id*.). Several items used during the robberies, including clothing and accessories used by Rini, were recovered from the shared residence of Wallace and Hooten. (*Id*.).

Wallace initially defended the case by filing a motion to suppress her confession to law enforcement on the theory that the same was unknowing and involuntary due to her experience of withdrawal symptoms from heroin usage. (Docket No. 46). However, prior to the Court convening a hearing on the matter, Wallace reached a plea agreement with the Government pursuant to which the parties agreed that the advisory guidelines range in her case was 63 to 78 months' incarceration based on a total offense level of 25 and a criminal history category of II. (Docket Nos. 55; 60-1).

At sentencing, the Court found justifiable reasons to accept the parties' stipulations as to the advisory guidelines range which was lower than the range of 70 to 87 months' incarceration computed by the Probation Office. (Docket No. 78 at 34-35). After accepting evidence from the

parties, hearing Wallace's allocution and argument from counsel, and weighing all of the section 3553(a) factors, the Court granted Wallace's motion for a variance, in part, and sentenced her to 48-months' incarceration. (*Id*. at 35-43). The Court fully detailed its reasons for the sentence on the record and noted on the Statement of Reasons form that the variance was based on the following: Wallace's difficult upbringing and lack of guidance as a youth; her post-offense rehabilitation efforts, as supported by the evidence presented relative to her completion of various programs while incarcerated at the ACJ; and her exhibition of genuine remorse during the sentencing proceeding. (*Id*.). As part of its discussion of the section 3553(a) factors, the Court noted: the violent nature of the armed bank robberies and attempted armed bank robbery; that Wallace's age of 35 did not support a variance; commented that she was "generally a very healthy person" without physical health issues; that she had been treating for mental health and substance abuse issues, which were under control; and that there were no unwarranted sentencing disparities between the sentences imposed in her case and those of Rini (66 months) and Hooten (39 months) due to the differences in their roles and criminal histories. (*Id*.). In addition to the 48-month term of imprisonment, the Court also imposed a term of three years' supervised release, waived any fine, and ordered her to pay a $300 special assessment and restitution in the amount of $8,033.00. (Docket No. 77). Neither party appealed this Court's judgment and challenged the reasonableness of the sentence.

Subsequent to the sentencing hearing, Wallace was returned to the ACJ while she awaited designation to a BOP facility. (Docket No. 80). Due to the COVID-19 pandemic, BOP transfers of inmates were halted in March and although they have restarted, transfers have not returned to pre-pandemic levels. (Docket Nos. 82; 90). Wallace was originally notified that she would be designated to FCI-Danbury, in Danbury, Connecticut but remains incarcerated at the ACJ awaiting

a transfer. (Docket No. 80). Based on information published by Allegheny County, the ACJ has had a total of 31 positive COVID-19 tests for inmates and currently has 3 positive inmates at the facility, with 28 inmates having been released or recovered. *See Allegheny County Jail, COVID-19 Information, COVID-19 Testing at ACJ (As of 7/13/2020)*, available at: https://www.alleghenycounty.us/jail/index.aspx (last visited 7/14/2020). The conditions and COVID-19 protocols at the ACJ are also the subject of the consent decree issued in *Graham et al. v. Allegheny County et al*, Civil A. No. 2:20-00496, 2020 WL 27772398 (W.D. Pa. May 27, 2020).

As noted, Wallace brings a habeas petition pursuant to 28 U.S.C. § 2241 against the United States, Michael Baughman, U.S. Marshal for the Western District of Pennsylvania, and Orlando Harper, Warden of the Allegheny County Jail. (Docket Nos. 80, 87). Wallace posits that because she has not yet been transferred to a BOP facility, she is ineligible to seek a sentence reduction via a motion for compassionate release under 18 U.S.C. § 3582(c)(1) or to request that the BOP release her to home confinement under 18 U.S.C. § 3624(c) and the CARES Act. (*Id.*). Wallace concedes that she is not a "medically vulnerable inmate" but asks that she be released from the ACJ due to the COVID-19 pandemic, the reports of positive tests by inmates at the ACJ, and statistics from other institutions where large COVID-19 outbreaks have taken place. (*Id.*). Wallace seeks release from custody pursuant to § 2241 to either: immediately commence her term of three (3) years' supervised release imposed by this Court; or, a non-transfer furlough to home confinement pending her transfer to a BOP facility. (*Id.*).

The Government, Marshal Baughman and Warden Harper all oppose Wallace's petition, asserting various defenses to her claims. (Crim. No. 19-49, Docket Nos. 82, 85, 90; Civ. A. No. 20-637, Docket No. 5). In particular, the Government and Marshal Baughman contend that: the Court lacks jurisdiction under § 2241; the requested relief is barred by the Prison Litigation

Reform Act; Marshal Baughman is not the proper defendant; Wallace has not sought compassionate release but has not demonstrated that she is entitled to same; and the Court otherwise lacks the authority to grant her requests that she be transferred to home confinement or a temporary furlough. (Crim. No. 19-49, Docket Nos. 82, 85, 90). Warden Harper maintains that the petition seeks relief from the federal respondents as his sole involvement in this matter is that Wallace remains housed at the ACJ on federal charges. (Civ. A. No. 20-637, Docket No. 5). He states that he will comply with any order issued by the Court concerning Wallace's status. (*Id*.). In Reply, Wallace provides additional statistics and citations as to the potential spread of COVID-19 in prison settings and continues to seek the same relief pursuant to § 2241 of release on supervised release, home confinement or temporary furlough. (Civ. A. No. 20-637, Docket No. 7).

The motion/petition have been exhaustively briefed and are now ripe for disposition.

III.   DISCUSSION

Section 2241 provides, in relevant part:

> (c) The writ of habeas corpus shall not extend to a prisoner unless ...
> He is in custody in violation of the Constitution or laws or treaties of
> the United States.

28 U.S.C. § 2241(c)(3). "[E]xcept in very limited circumstances […], federal prisoners cannot challenge the validity of their convictions or sentences in a § 2241 habeas petition." *Benford v. Williams*, No. CV 18-271, 2019 WL 913191, at *2 (W.D. Pa. Feb. 25, 2019) (citing 28 U.S.C. § 2255(e)) (further citations omitted). To this end, the Court of Appeals has held that "§ 2241 confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." *Cardona v. Bledsoe*, 681 F.3d 533, 535-38 (3d Cir. 2012). The types of claims cognizable in a § 2241 petition include: (1) claims affecting the

duration of the prisoner's custody; and, (2) allegations that challenge BOP conduct that "conflict[s] with express statements in the applicable sentencing judgment." *Cardona*, 681 F.3d at 536-37. However, in the Third Circuit claims challenging the conditions of confinement are generally not cognizable under § 2241 and must be pursued under § 1983 or a *Bivens* action. *See Wragg v. Ortiz*, --- F. Supp. 3d ----, 2020 WL 2745247, at *18-19 (D. N.J. May 27, 2020) (holding that Petitioners' claims challenging COVID-19 conditions and protocols at FCI Fort Dix were not cognizable under § 2241); *but see Wilson v. Williams*, 961 F.3d 829, 838-39 (6th Cir. 2020) (finding § 2241 jurisdiction over petition alleging that conditions due to COVID-19 at FCI Elkton justified their release from custody but noting that "[a] district court reviewing a claim under § 2241 does not have authority to circumvent the established procedures governing the various forms of release enacted by Congress" and that "[t]he district court's order requiring transfer from Elkton to another BOP facility was not proper under § 2241.").

Within this context, the Court considers the relief sought by Wallace in this matter, i.e., immediate release from custody to commence serving her 3-year term of supervised release; temporary release from the ACJ until her transfer to a BOP facility is effectuated; and/or, a temporary furlough for the same timeframe. (Crim. No. 19-49, Docket No. 80; Civ. A. No. 20-637 at 1). Underlying each of these requests are Wallace's assertions that because she is not presently in BOP custody, she is ineligible for compassionate release or consideration for transfer to home confinement under the CARES Act. (*Id.*). However, Wallace's position is incorrect as to her eligibility for compassionate release and the Court lacks the authority to otherwise order that she be released to home confinement or on a temporary furlough under § 2241.

To this end, as the Government points out, and this Court recently held in *United States v. Burrus*, 2020 WL 3799753, at (W.D. Pa. Jul. 7, 2020), a convicted defendant who has been

sentenced and remains incarcerated in the custody of the USMS while awaiting designation to a BOP facility is eligible for compassionate release and such a claim will be considered by the Court although it cannot be exhausted within the BOP through the typical procedures.  *See also United States v. Hammond*, Crim. No. 18-184, 2020 WL 2126783, at *1 (W.D. Pa. May 5, 2020) (Conti, J) (finding defendant eligible for compassionate release and denying his motion although "Hammond presents a unique procedural circumstance. He is a federal prisoner, serving a sentence imposed by this court on December 10, 2019, but he remains in the ACJ.").  Since Wallace is eligible for compassionate release, the Court cannot resort to § 2241 to consider whether she is entitled to immediate release from custody. *See Wilson*, 961 F.3d at 838-39.  Rather, she must meet her burden to show: "extraordinary and compelling reasons" justifying such reduction, 18 U.S.C. § 3582(c)(1)(A)(i); that the section 3553(a) factors support the requested reduction; and "whether such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  *Burrus*, 2020 WL 3799753, at *4 (citing *United States v. Graves*, Crim. No. 17-318, Docket No. 28 (W.D. Pa. Jun. 10, 2020) (Hornak, J.)).

   Here, Wallace has not attempted to demonstrate that she is entitled to compassionate release and it is doubtful that she could meet her burden for several reasons.  (*See* Crim. No. 19-49 at 80, 87; Civ. A. No. 20-637, Docket Nos. 1, 7).  First, the Court of Appeals has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  While there have been confirmed cases of COVID-19 at the ACJ, the facility has not experienced the type of outbreak discussed in the cases cited in her briefs which concerned other BOP facilities and/or state facilities.  Further, the ACJ remains

under the consent decree subject to the jurisdiction of this Court. *See Graham et al. v. Allegheny County et al*, 2020 WL 27772398. Courts have also determined that BOP responses at facilities experiencing significant COVID-19 outbreaks were not deliberately indifferent to the inmates' medical needs. *See e.g., Swain v. Jordan*, 961 F.3d 1276, 1280 (11th Cir. 2020) (vacating preliminary injunction in favor of medically vulnerable inmates at Miami Metro West Detention Center as they did not show that prison officials were deliberately indifferent to their medical needs); *Wilson*, 961 F.3d at 844 ("We conclude that petitioners have not provided sufficient evidence to show that the BOP was deliberately indifferent to the serious risk of harm presented by COVID-19 at Elkton.").

Second, a sentence reduction in Wallace's case would be inconsistent with the policy statements issued by the Sentencing Commission because she is 35 years old and admits that she is not a medically vulnerable inmate. (*See* Crim. No. 19-49, Docket No. 87). Indeed, the Court noted at Wallace's sentencing that she is "generally a very healthy person," lacks any pre-existing physical health conditions and found that a variance was not warranted based on any medical ailments. (Crim. No. 19-49, Docket No. 78 at 37). Hence, she cannot meet her burden to show that she suffers from a terminal illness or an ailment, which, coupled with the potential spread of COVID-19, would make her unable to provide self-care in a correctional environment. *See Hammond*, 2020 WL 2126783, at *4.

Third, even if Wallace had shown an extraordinary and compelling reason justifying a sentence reduction, the Court would also need to consider all of the section 3553(a) factors prior to justifying her release but the same do not support a sentence reduction in her case. *See Burrus*, 2020 WL 3799753, at *4 (citing *United States v. Pawlowski*, --- F. App'x ---, 2020 WL 3483740, at *2 (3d Cir. Jun. 26, 2020)) ("As the Court of Appeals recently affirmed in *Pawlowsk*i, whether

to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the Court."). In this regard, Wallace has served, at most, 20 months of the 48-month term of imprisonment imposed by the Court. As the Court explained at the sentencing hearing which took place in January of 2020, it considered each of the section 3553(a) factors, granted a variance below the advisory guidelines range, and ultimately determined that a sentence of 48 months was sufficient, but not greater than necessary to meet all of the goals of sentencing. (Crim. No. 19-49, Docket No. 78). Wallace has simply not justified a reduction of her sentence to 20 months, particularly given her role as a getaway driver in two violent armed bank robberies and an attempted armed bank robbery; her prior criminal history placing her in category II; and the other section 3553(a) factors detailed on the record at the sentencing. (*Id.*).

All told, the Court finds that it lacks jurisdiction to consider Wallace's claim for immediate release under § 2241 to the extent she challenges the conditions of her present confinement at the ACJ. *See Cardona*, 681 F.3d at 536-37. The Court also lacks the authority to reduce her sentence except pursuant to the compassionate release statute and she has not met her burden to demonstrate she is entitled to compassionate release under the applicable statutes and prevailing caselaw. *See Burrus*, 2020 WL 3799753, at *4.

With respect to Wallace's additional claims seeking a temporary furlough or a transfer to home confinement, the Court does not have jurisdiction to grant the requested relief under § 2241. *See Cardona*, 681 F.3d at 536-37 (noting limitations on jurisdiction over § 2241 petitions). In addition, under the controlling statutes, the authority to grant release on home confinement and/or a temporary furlough rests exclusively with the BOP and cannot be ordered by the Court. *See e.g.*, *United States v. Pawlowski*, No. CR 17-390-1, 2020 WL 2526523, at *1 (E.D. Pa. May 18,

2020), *aff'd*, No. 20-2033, 2020 WL 3483740 (3d Cir. June 26, 2020) ("Although the Court lacks authority to grant Pawlowski temporary release, the Bureau of Prisons (BOP) possesses the authority to do so under the furlough statute, 18 U.S.C. § 3622, and/or under 18 U.S.C. § 3624 and the CARES Act"); *United States v. Pritchett*, No. CR 19-280, 2020 WL 1640280, at *3 (W.D. Pa. Apr. 2, 2020) (citing 28 C.F.R. §§ 570.30-570.38) ("Defendant does not develop his alternative request for medical furlough in his Motion. In any event, as the Government notes in its Response, the authority to allow prisoner furloughs rests with the Bureau of Prisons under 18 U.S.C. § 3622."); *United States v. Horner*, Crim. No. 11-31, Docket No. 200 at 4 (W.D. Pa. May 28, 2020) (Gibson, J.) (citing *United States v. Black*, No. 2:12-cr-263-3, 2020 WL 2748288, at *1 (S.D. Ohio May 27, 2020)) (a release to home confinement "is a change in the location where the inmate serves his sentence, . . . only the BOP, not this Court, has the statutory authority to release him to home confinement under Section 3621(b)."). Thus, Wallace's motion/petition are also denied to the extent that she seeks such relief.

Finally, the Court having denied all of the relief sought by Wallace's motion/petition, it need not reach the remaining arguments advanced by the Government and Marshal Baughman.

IV.   CONCLUSION

Based on the foregoing, Wallace's motion/petition (Crim. No. 19-49, Docket No. 80; Civ. A. No. 20-637, Docket No. 1) are DENIED.   An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Date:   July 15, 2020

cc/ecf:   All counsel of record